1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   WENDY BAKER,                          No.  2:23-cv-02857-DAD-SCR

12              Plaintiff,

13        v.                               ORDER GRANTING DEFENDANTS'
                                           MOTIONS TO DISMISS WITH LEAVE TO
14   CALIFORNIA SCHOOL EMPLOYEES           AMEND AND DENYING DEFENDANT
     ASSOCIATION, RIVER DELTA              CSEA'S MOTION FOR SANCTIONS
15   VALLEY CHAPTER 821, et al.,
                                           (Doc. Nos. 10, 11, 23)
16              Defendants.

17

18

19

20        This matter is before the court on the motion to dismiss filed by defendants Tammy

21   Reynolds and Michelle Rodriguez ("the District defendants") on April 2, 2024, the motion to

22   dismiss filed by defendant California School Employees Association, River Delta Valley

23   Chapter 821 ("CSEA") also on April 2, 2024, and the motion for imposition of sanctions filed by

24   defendant CSEA on May 10, 2024.  (Doc. Nos. 10, 11, 23.)  On April 8, 2024, the pending

25   motions to dismiss were taken under submission on the papers.  (Doc. No. 12.)  The pending

26   motion for sanctions was taken under submission on the papers on June 4, 2024.  (Doc. No. 26.)

27   For the reasons explained below, the District defendants' motion to dismiss the claim brought

28   against them will be granted, defendant CSEA's motion to dismiss the claim brought against it

                                           1

will be granted, and defendant CSEA's motion for sanctions will be denied.  Out of an abundance of caution, plaintiff will be granted leave to amend her first amended complaint ("FAC").

## BACKGROUND

**A.    Legal Background**

California Education Code § 45168(a) states in relevant part:

> (1) [T]he governing board of each public school employer when drawing an order for the salary or wage payment due to a classified employee of the employer may, without charge, reduce the order by the amount that it has been requested in a revocable written authorization by an employee who is a member of the bargaining unit to deduct for the payment of dues in, or for any other service provided by, [a union] . . . .

> (2) The revocable written authorization shall remain in effect until expressly revoked in writing by the employee in accordance with the terms of the authorization.  . . .

> (6) The governing board shall honor the terms of the employee's written authorization for payroll deductions.  Employee requests to cancel or change authorizations for payroll deductions for employee organizations shall be directed to the employee organization rather than to the governing board.  The employee organization shall be responsible for processing these requests.  The governing board shall rely on the information provided by the employee organization to cancel or change authorizations, and the employee organization shall indemnify the public school employer for any claims made by the employee for deductions made in reliance on that information.

> (7) A classified or recognized employee organization that certifies that it has and will maintain individual employee authorizations shall not be required to submit to the governing board of a public school employer a copy of the employee's written authorization in order for the payroll deductions described in this section to be effective, unless a dispute arises about the existence or terms of the written authorization. The employee organization shall indemnify the public school employer for any claims made by the employee for deductions made in reliance on its notification.

**B.    Factual Background**

On January 29, 2024, plaintiff Wendy Baker filed the operative FAC in this action, alleging that defendants compelled her speech by deducting union dues and fees from her paychecks in violation of the First and Fourteenth Amendment.  (Doc. No. 5.)  In her FAC, plaintiff alleges the following.

/////

2

1          Plaintiff has been an employee of the Stockton Unified School District ("the District")

2     since 2009. (*Id.* at ¶ 5.) Defendant CSEA is the exclusive representative for plaintiff's

3     bargaining unit within the District. (*Id.* at ¶ 6.) Defendant Tammy Reynolds is the payroll

4     operations manager for the District and oversees the administration of the District's payroll

5     system, including deductions from plaintiff's paycheck for defendant CSEA's political speech.

6     (*Id.* at ¶ 7.) Defendant Michelle Rodriguez is the superintendent of the District and manages all

7     District departments, including the payroll services department. (*Id.* at ¶ 8.)

8          In 2009, plaintiff signed a membership application with defendant CSEA. (*Id.* at ¶ 29.) In

9     April 2022, plaintiff sent defendant CSEA a letter ending her membership and revoking her

10    authorization to make any and all deductions from her wages. (*Id.* at ¶¶ 29, 30.) In response,

11    plaintiff received an email from defendant CSEA's chief counsel stating that plaintiff could not

12    terminate the deductions until February 2023 pursuant to an additional agreement plaintiff had

13    signed at some time after 2009. (*Id.* at ¶¶ 31, 32.) Plaintiff demanded a copy of that additional

14    agreement from defendant CSEA, which defendant CSEA declined to provide. (*Id.* at ¶¶ 39, 41.)

15    After plaintiff's counsel inquired again about the requested copy of the additional agreement,

16    defendant CSEA provided a copy of an agreement that plaintiff purportedly signed in 2020. (*Id.*

17    at ¶ 49.) That additional agreement states that deductions may only be "revoked by written notice

18    to CSEA within a window period" of 10 days in February of each year. (Doc. No. 5-5 at 2.)

19    Plaintiff had never seen this additional agreement before and had never provided her electronic

20    signature that appeared on that document. (Doc. No. 5 at ¶¶ 51, 52.)

21         In July 2022, plaintiff and defendant CSEA signed a settlement agreement stating that

22    plaintiff would no longer be subject to defendant CSEA's deductions. (*Id.* at ¶¶ 53–55.) The

23    deductions ceased in July 2022, but then resumed in August 2022. (*Id.* at ¶ 56.) Defendant

24    CSEA never directed the District defendants to cease making the deductions. (*Id.* at ¶ 57.)

25    Trusting that defendant CSEA would honor the settlement agreement, plaintiff did not notice that

26    the deductions from her wages were continuing until September 2023. (*Id.* at ¶ 60.)

27         Upon noticing that the deductions had continued, plaintiff called Jelica Aruza, a human

28    resources technician employed by the District. (*Id.* at ¶ 62.) Plaintiff informed Ms. Aruza that

3

1    she had entered into a settlement agreement with defendant CSEA that no further deductions

2    would be made from her wages.  (*Id.* at ¶ 63.)  Ms. Aruza informed plaintiff that defendant CSEA

3    had never instructed the District to stop the deductions.  (*Id.* at ¶ 64.)

4        Believing it futile to contact defendant CSEA or the District defendants regarding the

5    ongoing deductions from her wages, plaintiff filed her complaint in this action on December 6,

6    2023; defendants were served with process on January 8 and 9, 2024.  (*Id.* at ¶¶ 69–74.)  On

7    January 11, 2024, plaintiff received a letter from defendant CSEA acknowledging that she was no

8    longer a member of the union.  (*Id.* at ¶ 75.)  Plaintiff's paystubs reflect nonconsensual

9    deductions totaling approximately $796 in withheld wages.  (*Id.* at ¶¶ 65, 66.)  On January 19,

10   2024, plaintiff's counsel received a check from defendant CSEA for $917.51, as well as a letter

11   explaining that the check represented a refund of the deductions, plus interest.  (*Id.* at ¶¶ 80, 81.)

12   Plaintiff refuses to cash the check.  (*Id.* at ¶ 82.)

13       Based on the above allegations, plaintiff asserts the following two claims in her FAC:

14   (1) infringement of her freedom of speech in violation of the First Amendment and 42 U.S.C.

15   § 1983, asserted against defendant CSEA; and (2) deprivation of her procedural due process

16   rights in violation of the First Amendment, Fourteenth Amendment, 42 U.S.C. § 1983, and 28

17   U.S.C. §§ 2201, 2202, asserted against the District defendants.  (Doc. No. 5 at 95–134.)

18       Plaintiff filed her FAC on January 29, 2024.  (Doc. No. 5.)  On April 2, 2024, the District

19   defendants filed their pending motion to dismiss, as did defendant CSEA.  (Doc. Nos. 10, 11.)

20   Plaintiff filed a combined opposition to both motions on April 16, 2024.  (Doc. No. 13.)  On

21   April 26, 2024, defendants filed their separate replies thereto.  (Doc. Nos. 17, 18.)  Subsequently,

22   on May 10, 2024, defendant CSEA filed a motion for imposition of sanctions pursuant to

23   Rule 11.  (Doc. No. 23.)  Plaintiff filed her opposition to the pending motion for sanctions on

24   May 24, 2024.  (Doc. No. 24.)  On June 3, 2024, defendant CSEA filed its reply thereto.  (Doc.

25   No. 25.)

26   /////

27   /////

28   /////

1    **LEGAL STANDARD**

2    **A.    Motion to Dismiss Pursuant to Rule 12(b)(1)**

3        Federal Rule of Civil Procedure 12(b)(1) permits a party to "challenge a federal court's

4    jurisdiction over the subject matter of the complaint." *Nat'l Photo Grp., LLC v. Allvoices, Inc.*,

5    No. 13-cv-03627-JSC, 2014 WL 280391, at *1 (N.D. Cal. Jan. 24, 2014). "A Rule 12(b)(1)

6    jurisdictional attack may be facial or factual. In a facial attack, the challenger asserts that the

7    allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction."

8    *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004) (internal citation omitted).

9    The court construes the District defendants' argument to be that the allegations in plaintiff's

10   complaint, even if assumed to be true, are insufficient to invoke federal jurisdiction over

11   plaintiff's claims. (*See* Doc. No. 10-1 at 7–10.) The District defendants therefore mount a facial

12   attack in their motion to dismiss.

13       "The district court resolves a facial attack as it would a motion to dismiss under

14   Rule 12(b)(6): Accepting the plaintiff's allegations as true and drawing all reasonable inferences

15   in the plaintiff's favor, the court determines whether the allegations are sufficient as a legal matter

16   to invoke the court's jurisdiction." *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014).

17   However, the court need not assume the truth of legal conclusions cast in the form of factual

18   allegations. *Warren v. Fox Fam. Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003).

19   **B.    Motion to Dismiss Pursuant to Rule 12(b)(6)**

20       The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal

21   sufficiency of the complaint. *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir.

22   1983). "Dismissal can be based on the lack of a cognizable legal theory or the absence of

23   sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901

24   F.2d 696, 699 (9th Cir. 1990). A plaintiff is required to allege "enough facts to state a claim to

25   relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A

26   claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw

27   the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v.*

28   *Iqbal*, 556 U.S. 662, 678 (2009).

In determining whether a complaint states a claim on which relief may be granted, the court accepts as true the allegations in the complaint and construes the allegations in the light most favorable to the plaintiff. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). However, the court need not assume the truth of legal conclusions cast in the form of factual allegations. *U.S. ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986). "[T]o be entitled to the presumption of truth, allegations in a complaint . . . must contain sufficient allegations of underlying facts to give fair notice" to the opposing party. *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). While Rule 8(a) does not require detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 676 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). It is inappropriate to assume that the plaintiff "can prove facts that it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

In ruling on a motion to dismiss under Rule 12(b)(6), the court is permitted to consider material that is properly submitted as part of the complaint, documents that are not physically attached to the complaint if their authenticity is not contested and the plaintiffs' complaint necessarily relies on them, and matters of public record. *Lee v. City of Los Angeles*, 250 F.3d. 668, 688–89 (9th Cir. 2001).

## C.    Motion for Sanctions Pursuant to Federal Rule of Civil Procedure 11

"Rule 11 authorizes sanctions for pleadings 'presented for any improper purpose' or for claims 'not warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law.'" *U.S.A. Dawgs, Inc. v. Crocs, Inc.*, 848 F. App'x 788 (9th Cir. 2021)[1] (quoting Fed. R. Civ. P. 11); *see also* Fed. R. Civ. P. 11(b). "Where,

---

[1]  Citation to this and other unpublished Ninth Circuit opinions throughout this order is appropriate pursuant to Ninth Circuit Rule 36-3(b).

1   as here, the complaint is the primary focus of Rule 11 proceedings, a district court must conduct a

2   two-prong inquiry to determine (1) whether the complaint is legally or factually 'baseless' from

3   an objective perspective, and (2) if the attorney has conducted 'a reasonable and competent

4   inquiry' before signing and filing it."  *Christian v. Mattel, Inc.*, 286 F.3d 1118, 1127 (9th Cir.

5   2002).  "'Because the rule is not intended to chill an attorney's enthusiasm or creativity in

6   pursuing factual or legal theories,' Rule 11 sanctions are reserved for 'the exceptional

7   circumstance.'"  *Lima v. Deutsche Bank Nat'l Tr. Co.*, 687 F. App'x 606 (9th Cir. 2017) (quoting

8   *Riverhead Sav. Bank v. Nat'l Mortg. Equity Corp.*, 893 F.2d 1109, 1115 (9th Cir. 1990)).

9                                              **ANALYSIS**

10  **A.        The District Defendants' Motion to Dismiss**

11          In their pending motion to dismiss, the District defendants argue that plaintiff lacks

12  Article III standing to pursue her claim brought against them for violation of her procedural due

13  process rights, that plaintiff's claim is barred by the Eleventh Amendment, and that plaintiff's

14  claim is moot.  (*See* Doc. No. 10-1 at 7–13.)  Separately, the District defendants argue that

15  plaintiff's procedural due process claim fails on the merits for several reasons.  (*See id.* at 13–19.)

16  The court will first address the District defendants' jurisdictional arguments before proceeding to

17  the merits of plaintiff's claim.

18          1.        Whether Plaintiff Lacks Standing for Her Procedural Due Process Claim

19          In moving to dismiss, the District defendants argue that plaintiff lacks standing in

20  connection with her procedural due process claim.  (Doc. No. 10-1 at 7–10.)  Plaintiff argues in

21  opposition that the Ninth Circuit has held in nearly identical circumstances to those here that a

22  plaintiff had standing under the lower standard applicable to procedural due process claims.

23  (Doc. No. 13 at 24–25) (citing *Ochoa v. Pub. Consulting Grp., Inc.*, 48 F.4th 1102, 1107 (9th Cir.

24  2022)).  The District defendants appear to acknowledge in reply that plaintiff has standing to

25  pursue her procedural due process claim, arguing that claim nevertheless fails on the merits

26  pursuant to another section of the Ninth Circuit's opinion in *Ochoa*.  (*See* Doc. No. 18 at 8.)

27  /////

28  /////

                                                    7

1    The Ninth Circuit stated in *Ochoa*:

2        [W]e hold that [Ochoa] does have standing to seek declaratory and
         injunctive relief against both the State and the private defendants.
3

4        To have standing to bring suit, a plaintiff must generally establish
         that she has suffered an injury in fact that is fairly traceable to the
         challenged conduct of the defendant and that will likely be redressed
5        by a favorable decision.  *See* [*Lujan v. Defenders of Wildlife*, 504
         U.S. 555, 556 (1992)].    The Supreme Court has explained that
6        "procedural right are special," however, and a plaintiff can therefore
         assert a procedural right "without meeting all the normal standards
7        for redressability and immediacy."  *Id.* at 572 n.7 . . . .  To establish
         procedural standing, a plaintiff must "show that it was accorded a
8        procedural right to protect its interests and that it has concrete
         interests that are threatened." . . .
9

10       Ochoa meets this less demanding standard.  Under the Fourteenth
         Amendment, she has a procedural right to due process.  . . .  This
11       right protects her concrete liberty interest under the First Amendment
         in being free from compulsion to financially support union speech.
12       . . .  It is true that Ochoa's claimed future harms are speculative
         because it is not clear whether she will ever again suffer an
13       unauthorized withholding.  However, given that she has already had
         union dues erroneously withheld from her paycheck twice and
14       remains employed with the State and therefore at risk of additional
         unauthorized withholdings, the risk of future injury is "sufficiently
15       real" to meet the low threshold required to establish procedural
         standing.

16   *Ochoa*, 48 F.4th at 1107.

17       In an opinion filed concurrently with the opinion in *Ochoa*, the Ninth Circuit affirmed the

18   dismissal of the plaintiff's procedural due process claim pursuant to Rule 12(b)(1) due to lack of

19   standing where the plaintiff had retired, meaning "the threat of future unauthorized dues

20   deductions from her wages [was] entirely 'imaginary.'"  *Wright v. SEIU Local 503*, 48 F.4th

21   1112, 1121 (9th Cir. 2022).  The court finds plaintiff's allegations in her FAC to be more similar

22   to the circumstances addressed by the Ninth Circuit in *Ochoa* rather than to those confronted by

23   the court in *Wright*.  Here, plaintiff alleges that dues and other fees were improperly deducted

24   from her wages beginning in April 2022, that she entered into a settlement agreement with

25   defendant CSEA to end the improper deductions in July 2022, and that the improper deductions

26   restarted for a second time in August 2022.  (Doc. No. 5 at ¶¶ 29–56.)  Plaintiff has not alleged

27   that she is retired.

28   /////

8

1    The court therefore concludes that plaintiff has standing to bring her procedural due

2    process claim against the District defendants.  *See Ochoa*, 48 F.4th at 1107; *Zielinski v. SEIU*

3    *Local 503*, No. 20-36076, 2022 WL 4298160, at *1 n.3 (9th Cir. Sept. 19, 2022) ("To the extent

4    Zielinski seeks prospective relief on his procedural due process claim, he has standing but his

5    claim fails for the reasons discussed in [*Ochoa*]."); *Parde v. SEIU, Local 721*, No. 23-55021,

6    2024 WL 2106182, at *2 (9th Cir. May 10, 2024) ("Parde has standing to seek retrospective and

7    prospective relief against all defendants on her procedural due process claim.  Under *Ochoa*, an

8    employee who 'has already had union dues erroneously withheld from her paycheck' and

9    'remains employed with the State' faces a 'sufficiently real' risk of future injury 'to meet the low

10   threshold required to establish procedural standing,' even if her 'claimed future harms are

11   speculative.'") (quoting *Ochoa*, 48 F.4th at 1107).

12        2.    Whether Plaintiff's Procedural Due Process Claim is Moot

13   The District defendants contend that plaintiff's procedural due process claim is moot in

14   any event because after plaintiff filed her complaint initiating this action, the dues deductions

15   ceased and defendant CSEA refunded the unauthorized deductions.  (Doc. No. 10-1 at 12–13)

16   (citing *Kant v. SEIU, Local 721*, No. 21-cv-01153-FMO-SHK, 2022 WL 5239532, at *5 (C.D.

17   Cal. Sept. 1, 2022), *aff'd* No. 22-55904, 2023 WL 6970156 (9th Cir. Oct. 19, 2023)).  The

18   District defendants further argue that the "capable of repetition" and "voluntary cessation"

19   exceptions to mootness are inapplicable here.  (*Id.* at 13) (citing *Kant*, 2022 WL 5239532, at *5).

20   Plaintiff argues in opposition that her procedural due process claim is not moot because the

21   District defendants have "not adopted any procedural safeguards to prevent futu[r]e deprivation

22   of [plaintiff's] rights" and because several exceptions to mootness are applicable.  (Doc. No. 13 at

23   30–32.)  In reply, the District defendants contend that "plaintiff's conclusory argument that this

24   conduct is capable of repetition is baseless and has been roundly rejected by the courts."  (Doc.

25   No. 18 at 11) (citing *Wright*, 48 F.4th at 1120).

26        In a footnote at the end of its analysis of the standing question in *Ochoa*, the Ninth Circuit

27   concluded that the plaintiff's procedural due process claim was not moot because the defendants

28   had "not provide[d] the type of procedural safeguards Ochoa seeks . . . nor is there any evidence

9

1   that . . . would make future unauthorized withholdings an impossibility."[2]  48 F.4th at 1107 n.5.

2   Here, plaintiff seeks the imposition of procedural safeguards such as "sufficient notice of CSEA

3   deductions, an opportunity to contest the deductions, and access to a neutral third party

4   decisionmaker."  (Doc. No. 5 at 23.)  Nothing in the allegations of plaintiff's FAC suggests that

5   the District defendants have provided these safeguards.  Indeed, the District defendants maintain

6   throughout their pending motion that no such safeguards are forthcoming.  (*See, e.g.*, Doc. No. 10

7   at 10) ("[California Education Code § 45168] does not allow a school district to make any

8   determinations of any kind about any disputes between the employee and union.").  Nor do

9   plaintiff's allegations suggest that "future unauthorized withholdings [are] an impossibility."

10  *Ochoa*, 48 F.4th at 1107 n.5.

11         Accordingly, the court concludes that plaintiff's procedural due process claim is not moot.

12  *See Parde*, 2024 WL 2106182, at *2 (finding that the plaintiff's procedural due process claim was

13  not moot in light of "the low threshold Parde faces to establish procedural standing) (citing

14  *Ochoa*, 48 F.4th at 1107); *Schiewe v. SEIU Local 503*, No. 20-35882, 2023 WL 4417279, at *1

15  (9th Cir. July 10, 2023) (noting that the district court "properly dismissed the First Amendment

16  claims for prospective relief as moot" where "[t]he deduction of union dues ended shortly after

17  the complaint was filed" but affirming the dismissal of the plaintiff's procedural due process

18  claim on the merits) (citing *Ochoa*, 48 F.4th at 1110–11).[3]

19         3.    Whether Plaintiff's Procedural Due Process Claim is Barred by the Eleventh

20               Amendment

21         The District defendants next argue that plaintiff's procedural due process claim asserted

22  against them is barred in its entirety by the Eleventh Amendment.  (Doc. No. 10-1 at 10–12).

---

[2]  The court in *Ochoa* was reviewing both a motion to dismiss and a motion for summary judgment.

[3]  Because mootness is an Article III jurisdictional defect, the Ninth Circuit in *Schiewe* could not have proceeded to address the merits of the procedural due process claim unless that claim were not moot, or unless some exception to the mootness doctrine applied in that case.  *See Rosemere Neighborhood Ass'n v. U.S. Env't Prot. Agency*, 581 F.3d 1169, 1172 (9th Cir. 2009) ("Federal courts lack jurisdiction to consider moot claims.").  Nothing in the Ninth Circuit's decision in *Schiewe* suggested any mootness exception was applicable there.

1    Plaintiff contends in opposition that the *Ex parte Young* exception for prospective relief applies

2    here where she asserts a claim against the District defendants in their official capacities and seeks

3    a declaratory judgment, permanent injunction, and nominal damages in acknowledgment of the

4    violation of her constitutional rights.  (Doc. No. 13 at 33–34.)

5            "California school districts . . . remain arms of the state and continue to enjoy Eleventh

6    Amendment immunity."  *Sato v. Orange Cnty. Dep't of Educ.*, 861 F.3d 923, 934 (9th Cir. 2017).

7    "Thus, the Eleventh Amendment bars suit against school district officials sued in their official

8    capacities."  *Barto v. Miyashiro*, No. 21-56223, 2022 WL 17729410, at *1 (9th Cir. Dec. 16,

9    2022).

10           The court concludes that the Eleventh Amendment only bars plaintiff from seeking the

11   award of nominal damages.  This is because "state sovereign immunity protects state officer

12   defendants sued in federal court in their official capacities from liability in damages, including

13   nominal damages."  *Platt v. Moore*, 15 F.4th 895, 910 (9th Cir. 2021).  Plaintiff contends the

14   court need not follow this seemingly binding Ninth Circuit authority directly addressing the

15   relevant issue because the court "is not bound to rely on or affirm legal conclusions that were

16   without any real consideration of the issues or analysis."  (Doc. No. 13 at 34.)  The court notes

17   that the Ninth Circuit has repeatedly reiterated *Platt*'s continued vitality in contexts quite similar

18   to those presented in this case.  *See, e.g.*, *Kant v. SEIU, Local 721*, No. 22-55904, 2023 WL

19   6970156, at *2 (9th Cir. Oct. 23, 2023); *Laird v. United Teachers L.A.*, No. 22-55780, 2023 WL

20   6970171, at *1 (9th Cir. Oct. 23, 2023); *Craine v. AFSCME, Local 119*, Nos. 23-55206, 23-

21   55369, 2024 WL 1405390, at *1 (9th Cir. Apr. 2, 2024).  Indeed, more recently, the Ninth Circuit

22   has issued an unpublished opinion directly rejecting plaintiff's argument in this regard.  *See Klee*

23   *v. IUOE, Local 501*, No. 23-3304, 2025 WL 252478, at *2 (9th Cir. Jan. 21, 2025) ("[The

24   plaintiff] seeks nominal damages 'for the deprivation of his First Amendment and Fourteenth

25   Amendment rights,' rather than as a measure to prevent future injury. . . .  Therefore, even if

26   there is room under *Ex parte Young* for certain types of nominal damages, there is none for those

27   that Klee seeks.").

28   /////

1       However, plaintiff's procedural due process claim seeking declaratory and injunctive

2  relief properly falls under the *Ex parte Young* exception. "In determining whether the doctrine of

3  *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a

4  'straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law

5  and seeks relief properly characterized as prospective." *Verizon Md., Inc. v. Pub. Serv. Comm'n*

6  *of Md.*, 535 U.S. 635, 645 (2002) (alteration in original). The District defendants argue that the

7  relief requested by plaintiff is not prospective because plaintiff alleges that she has resigned from

8  the union and that the dues deductions have ceased. (Doc. Nos. 10-1 at 11; 18 at 9) (citing *Kant*,

9  2022 WL 5239532, at *4–5). However, the court finds the district court's decision in *Kant*,

10  which was issued prior to the Ninth Circuit's opinions in *Wright* and *Ochoa*, to be inapposite.

11  The district court in *Kant* found no ongoing violation of federal law with respect to *Ex parte*

12  *Young* for the same reasons it found that the plaintiffs' claims for prospective relief were moot,

13  namely that the plaintiffs had resigned from the union, opted out of dues deductions, and received

14  full reimbursements. *Kant*, 2022 WL 5239532, at *4–5.[4] But here, as discussed above, under the

15  Ninth Circuit's decision in *Ochoa*, plaintiff's claim cannot be said to be moot. Instead, "the risk

16  of future injury is 'sufficiently real.'" *Ochoa*, 48 F.4th at 1107. Accordingly, for reasons similar

17  to those discussed above regarding standing and mootness, the court finds that the injunctive and

18  declaratory relief requested by plaintiff are "properly characterized as prospective." *Verizon Md.*,

19  535 U.S. at 645; *see also Parde*, 2024 WL 2106182, at *2–3 (finding that the plaintiff's

20  procedural due process claim seeking damages was barred because "[n]othing in the SAC or

21  briefing demonstrates a waiver . . . of the State's sovereign immunity" but dismissing the

22  plaintiff's "remaining procedural due process claims" seeking declaratory and injunctive relief on

23  the merits).

24  /////

25  /////

---

26  [4]  The Ninth Circuit affirmed the district court's decision on other grounds in an unpublished

27  opinion. *See Kant*, 2023 WL 6970156. Specifically, the Ninth Circuit concluded that the
plaintiffs' claims for prospective relief were moot and that sovereign immunity barred the

28  plaintiffs' retroactive claims for damages. *Id.* at *1, 2.

4.    Whether Plaintiff's Procedural Due Process Claim Fails on the Merits

Plaintiff asserts a claim for violation of her procedural due process rights under the First and Fourteenth Amendments on the grounds that the District defendants have failed to adopt an internal procedure requiring CSEA to produce a written authorization in the event of a dispute regarding the issue of authorization.  (Doc. No. 5 at ¶¶ 118–34.)

The District defendants argue that plaintiff's procedural due process claim must be dismissed because the District is compelled by state law to accept defendant CSEA's certifications regarding which employees' dues deductions are authorized.[5]  (Doc. No. 10-1 at 13–14) (citing *Hartmann v. Cal. Dep't of Corr. and Rehab.*, 707 F.3d 1114, 1127 (9th Cir. 2013); *Deering v. IBEW Local 18*, No. 22-55458, 2023 WL 6970169 (9th Cir. Oct. 19, 2023); *Quezambra v. United Domestic Workers of Am. AFSCME Local 3930*, 445 F. Supp. 3d 695, 706 (C.D. Cal. 2020)).  Plaintiff argues in opposition that the District defendants "mistakenly suggest" that § 45168 "requires mandatory indifference to the validity of authorization," when in fact— according to plaintiff—§ 45168 permits the District defendants to request that defendant CSEA provide plaintiff's authorization.  (Doc. No. 13 at 25–30.)

"Local governing bodies [ ] can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers."  *Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658, 690 (1978); *see also Los Angeles Cnty. v. Humphries*, 562 U.S. 29, 39 (2010) ("*Monell*'s 'policy or custom' requirement applies in § 1983 cases irrespective of whether the relief sought is monetary or prospective.").  "But under § 1983, local governments are responsible only for 'their *own* illegal acts.'"  *Connick v. Thompson*, 563 U.S. 51, 60 (2011).

Courts in the Ninth Circuit confronting similar circumstances to those alleged by plaintiff here—that is, where a local government has relied on information supplied by a union to deduct

---

[5]  The District defendants advance several other arguments as to why plaintiff's procedural due process claim must be dismissed.  Because this claim will be dismissed on the grounds that the District defendants were compelled to deduct dues under California state law, the court does not address the District defendants' other arguments.

1   union dues as required under state law—have concluded seemingly universally that a local

2   government cannot be held liable under § 1983.  *See, e.g.*, *Quezambra*, 445 F. Supp. 3d at 705–06

3   (concluding that the county defendant was not liable under § 1983 where "state law mandates that

4   (1) the Union exclusively process all employee requests to alter their union dues deduction from

5   their wages; (2) the County accept Union certifications regarding which employees have

6   authorized dues deductions; [and] (3) the County not require a copy of an employee's dues

7   authorization unless a dispute arises over that authorization" because the county defendant was

8   merely complying with state law), *aff'd* No. 20-55643, 2023 WL 4398498 (9th Cir. July 7, 2023);

9   *Deering*, 2023 WL 6970169, at *1 (affirming the district court's dismissal of the plaintiff's

10  *Monell* claim on the grounds that "*Monell* liability . . . will not attach to city policy if state law

11  compels that policy" and that "Los Angeles was compelled to act by California law to rely on

12  IBEW 18's certification that the union dues were authorized"); *Aliser v. SEIU Cal.*, 419 F. Supp.

13  3d 1161, 1165 (N.D. Cal. 2019) ("Here, however, the plaintiffs have not plausibly alleged any

14  county policy of relying on unions for dues deductions information—rather, it appears that the

15  counties were simply complying with state law."); *Craine*, 2024 WL 1405390, at *3 ("Plaintiffs

16  also cannot point to any deliberate choice the municipalities made, as the municipalities had to

17  comply with California state law requiring them to deduct dues in reliance on the unions'

18  representations."); *cf. Crouthamel v. Walla Walla Pub. Schs.*, No. 21-35387, 2023 WL 6970168,

19  at *1 (9th Cir. Oct. 23, 2023) (affirming the district court's grant of summary judgment in the

20  defendants' favor on the grounds that the § 1983 claims "brought against the Superintendents 'in

21  their official capacity' fail" because "local governments cannot be liable under § 1983 for

22  following state law"); *Wright*, 48 F.4th at 1125 ("[*Janus v. AFSCME*, 585 U.S. 878 (2018)]

23  imposes no affirmative duty on government entities to ensure that membership agreements and

24  dues deductions are genuine.").  This court will, of course, follow this binding authority, as well

25  as the non-binding authority reaching the same conclusion.

26          The court therefore concludes that plaintiff's § 1983 claim brought against the District

27  defendants for violation of her procedural due process rights under the First and Fourteenth

28  Amendments must be dismissed.  California Education Code § 45168 is virtually identical in all

1   relevant respects to the statutes analyzed in the decisions cited above. *See* Cal. Gov. Code

2   § 1157.12 (requiring public employers to rely on information from employee organizations

3   regarding dues authorizations and cancellations); Wash. Rev. Code § 41.56.110 (same). Plaintiff

4   alleges that defendant CSEA never instructed the District defendants to cease the deductions

5   pursuant to plaintiff's alleged revocation. (*See* Doc. No. 5 at ¶¶ 62–64, 69–70.) Therefore, the

6   District defendants had no discretion and were required by California law to accept the

7   information supplied by defendant CSEA regarding any authorization or cancellation of dues

8   deductions by plaintiff. *See* Cal. Educ. Code § 45168(a)(6). Thus, deducting union dues from

9   plaintiff's wages in California cannot be said to be the result of a policy or custom of the District

10   defendants. *See Crouthamel*, 2023 WL 6970168, at *1 (affirming the district court's grant of

11   summary judgment on the § 1983 claims brought against the defendant superintendents in their

12   official capacity); *Connick*, 563 U.S. at 60 ("[U]nder § 1983, local governments are responsible

13   only for 'their *own* illegal acts.'").

14         Plaintiff argues that when she "told Ms. Aruza about the terms of the settlement between

15   Baker and CSEA after she had realized dues deductions ha[d] continued, that triggered the

16   statutory authority of District defendants to ask CSEA for a showing of written authorization for

17   dues deductions." (Doc. No. 13 at 29–30) (citing Cal. Educ. Code § 45168(a)(7)). The court

18   construes plaintiff's argument to be that the District defendants' alleged conduct here was not

19   compelled by state law, because the District defendants could have requested a copy of plaintiff's

20   written authorization but failed to do so.

21         The court is not persuaded by plaintiff's argument in this regard. Even assuming for the

22   sake of argument that plaintiff is correct and that the District defendants could have, but failed to,

23   request a copy of plaintiff's authorization, none of that changes the fact that the District

24   defendants would not be permitted under California law to end the dues deductions until

25   instructed to do so by defendant CSEA. This conclusion is strengthened by several decisions

26   issued by courts concerning California Government Code § 1157.12, a statute with nearly

27   identical language as that contained in § 45168(a)(7). *See Craine*, 2024 WL 1405390, at *3

28   (affirming the district court's decision on the grounds that "the municipalities had to comply with

1  [California Government Code § 1157.12] requiring them to deduct dues in reliance on the unions'

2  representations"); *Deering*, 2023 WL 6970169, at *1 (same); *Quezambra*, 2023 WL 4398498, at

3  *1 (same); *see also* Cal. Gov. Code § 1157.12(a) ("An employee organization that certifies that it

4  has and will maintain individual employee authorizations shall not be required to provide a copy

5  of an individual authorization to the public employer unless a dispute arises about the existence or

6  terms of the authorization.  The employee organization shall indemnify the public employer for

7  any claims made by the employee for deductions made in reliance on that certification.").  Rather,

8  as relevant here, California law is clear that "[e]mployee requests to cancel or change

9  authorizations for payroll deductions for employee organizations *shall* be directed to the

10  employee organization rather than to the governing board. . . .  The governing board *shall* rely on

11  the information provided by the employee organization to cancel or change authorizations . . . ."

12  Cal. Educ. Code § 45168(a)(6) (emphasis added).

13       Accordingly, the court concludes that the District defendants' motion to dismiss plaintiff's

14  procedural due process claim asserted against them must be granted.  *See Craine v. AFSCME,*

15  *Local 119*, No. 22-cv-03310-DSF-SK, 2023 WL 2379217, at *2–4 (C.D. Cal. Feb. 1, 2023)

16  (dismissing the plaintiff's claims asserted in his original complaint against the county defendant),

17  *aff'd* 2024 WL 1405390; *cf. Crouthamel*, 2023 WL 6970168, at *1 (affirming the district court's

18  grant of summary judgment in the defendants' favor on the grounds that the § 1983 claims

19  "brought against the Superintendents 'in their official capacity' fail" because "local governments

20  cannot be liable under § 1983 for following state law").[6]

---

21  [6]  It is true that, as a general matter, "the law is unsettled in the Ninth Circuit with respect to a

22  municipality's liability under § 1983 when the municipality is following or acting in accordance
    with state law."  *Campos v. Fresno Deputy Sheriff's Assoc.*, 535 F. Supp. 3d 913, 927 (E.D. Cal.

23  2021).  However, as discussed above, courts in this circuit appear to be unanimous that in the
    specific circumstances where a local government has relied on information supplied by a union to

24  deduct union dues as required by state law, the local government is not liable under § 1983.  The
    Ninth Circuit has indicated in unpublished opinions that local governments also may not be held

25  liable under § 1983 when following mandatory state law in other circumstances.  *See Standley on*

26  *behalf of B.M.S. v. Nelms*, No. 22-35833, 2024 WL 1793667, at *1 (9th Cir. Apr. 25, 2024) ("To
    assert any claim against the School District under § 1983, including a claim for injunctive and

27  declaratory relief, Standley had to plead facts showing that the alleged violation arises from a
    'policy or custom' of the School District, and not merely from the policy of a *state* agency, the

28  OHA.") (citing *Humphries*, 562 U.S. at 32–33).  Nevertheless, because the discussion above is

16

1    **B.    Defendant CSEA's Motion to Dismiss**

2          Plaintiff also asserts a § 1983 claim for violation of her free speech rights under the First

3    Amendment against defendant CSEA.  (Doc. No. 5 at ¶¶ 95–117.)  Defendant CSEA argues that

4    plaintiff's claim must be dismissed on the grounds that both the Ninth Circuit and district courts

5    within this circuit confronting nearly identical circumstances have universally found that unions

6    are not state actors as required by § 1983.  (Doc. No. 11-2 at 13–21) (citing *Wright*, 48 F.4th

7    1112; *Belgau v. Inslee*, 975 F.3d 940 (9th Cir. 2020); *Mendez v. Cal. Teachers Assoc.*, 419 F.

8    Supp. 3d 1182 (N.D. Cal. 2020), *aff'd* 854 F. App'x 920 (9th Cir. 2021); *Hubbard v. SEIU*

9    *Local 2015*, 552 F. Supp. 3d 955 (E.D. Cal. 2021), *aff'd* No. 21-16408, 2023 WL 6971463 (9th

10   Cir. Oct. 23, 2023)).

11         Plaintiff argues in opposition that the decisions cited by defendant CSEA were all issued

12   prior to the Supreme Court's decision in *Lindke v. Freed*, 601 U.S. 187 (2024), and that under

13   that holding defendant CSEA engaged in state action.  (Doc. No. 13 at 20–21.)  Additionally,

14   plaintiff contends that the Ninth Circuit's decisions in *Wright* and *Belgau*, as well as the district

15   court decision in *Mendez*, are distinguishable from this case because "[i]t is undisputed that there

16   is no authorization between Baker and CSEA."  (*Id.* at 24.)

17         In reply, defendant CSEA argues that plaintiff's arguments "are absurd and contrary to

18   settled law" and that the Supreme Court's decision in *Lindke* "is simply irrelevant to the present

19   case."  (Doc. No. 17 at 9.)  Defendant CSEA further points out that plaintiff's counsel filed a

20   notice of supplemental authority on March 19, 2024 presenting the same argument regarding the

21   decision in *Lindke* to the Ninth Circuit in another case.  (*Id.*); *see also* Notice of Supplemental

22   Authority, *Craine v. AFSCME, Local 119*, No. 23-55206 (9th Cir. Apr. 2, 2024), Doc. No. 60.

23   Defendant CSEA argues that the Ninth Circuit implicitly rejected plaintiff's argument in this

24   /////

25   /////

26

27   sufficient to resolve the District defendants' motion to dismiss, the court does not consider
     whether a local government may be held liable under § 1983 in circumstances other than those
28   alleged by plaintiff in her FAC.

1  regard by issuing an unpublished opinion on April 2, 2024 finding no state action on the part of

2  the union.  (Doc. No. 17 at 9); *see also Craine*, 2024 WL 1405390, at \*2.

3       This court easily concludes that plaintiff's First Amendment claim against defendant

4  CSEA fails due to lack of state action for the same reasons discussed in the many decisions,

5  including those binding on this court, involving virtually identical statutes.  *See, e.g.*, *Wright*, 48

6  F.4th at 1123 ("*Wright*'s constitutional claims against SEIU rest on a 'private misuse of a state

7  statute' that is, by definition, 'contrary to the relevant policy articulated by the State.'  *Wright*'s

8  claims thus fail to identify any 'state policy' that would make SEIU a state actor under § 1983.")

9  (internal citation omitted); *Belgau*, 975 F.3d at 946 ("The gist of Employees' claim against the

10  union is that it acted in concert with the state by authorizing deductions without proper consent in

11  violation of the First Amendment.  The fallacy of this approach is that it assumes state action

12  sufficient to invoke a constitutional analysis."); *Hubbard*, 552 F. Supp. 3d at 960–61 ("Under

13  analogous circumstances, courts within the Ninth Circuit have repeatedly found a union's

14  authorization of dues, even if fraudulently made, does not transform the union's exclusively

15  private act into state action . . . ."), *aff'd* 2023 WL 6971463, at \*1 ("The § 1983 claims against

16  SEIU Local 2015 fail for lack of state action.").

17       The Supreme Court's decision in *Lindke* is inapposite because it addresses the inverse of

18  the circumstances present here:  "By and large, our state-action precedents have grappled with . . .

19  whether a nominally private person has engaged in state action for the purposes of § 1983.

20  [*Lindke*], by contrast, requires us to analyze whether a *state official* engaged in state action or

21  functioned as a private citizen."  *Lindke*, 601 U.S. at 196 (internal citations omitted).

22  Additionally, the Supreme Court in *Lindke* addressed entirely different factual circumstances

23  since that case concerned whether a state official had engaged in state action by posting about

24  job-related topics on social media.  *Id.* at 191.  This court's conclusion in this regard is supported

25  by the unpublished Ninth Circuit opinions that have consistently affirmed district court decisions

26  addressing similar circumstances to those presented here without any mention of the Supreme

27  Court's decision in *Lindke*.  *See, e.g.*, *Parde*, 2024 WL 2106182, at \*3 ("The district court

28  properly dismissed Parde's claims against the union for failure to allege state action for the

1  purposes of § 1983. . . .  Nothing in the law authorizes . . . the union to erroneously or

2  fraudulently certify that it has and will maintain valid employee authorizations. . . .  Parde's claim

3  arises from 'a "private misuse of a state statute" that is, by definition, "contrary to the relevant

4  policy articulated by the State."'") (quoting *Wright*, 48 F.4th at 1123); *see also Craine*, 2024 WL

5  1405390, at *2.

6       Accordingly, plaintiff's First Amendment claim brought against defendant CSEA will be

7  dismissed.  *See Craine*, 2023 WL 2379217, at *3–4 (dismissing the plaintiff's claims asserted in

8  his original complaint against the union defendant), *aff'd* 2024 WL 1405390; *Parde v. SEIU,*

9  *Local 721*, No. 22-cv-03320-GHW-PLA, Doc. No. 89 (C.D. Cal. Dec. 12, 2022) (dismissing the

10  plaintiff's claims asserted against the union defendant), *aff'd* 2024 WL 2106182.

11  **C.    Leave to Amend**

12       Plaintiff's claims as currently pled are clearly foreclosed by binding Ninth Circuit

13  authority.  However, given the policy of "extreme liberality" and the fact that the court has not

14  previously dismissed plaintiff's claims, the court will nonetheless grant plaintiff leave to amend

15  out of an abundance of caution.  *Rosenberg Bros. & Co. v. Arnold*, 283 F.2d 406, 406 (9th Cir.

16  1960; *see also Cook, Perkiss, and Liehe, Inc. v. N. Cal. Collection Servs.*, 911 F.2d 242, 247 (9th

17  Cir. 1990) (noting that a district court "should grant leave to amend even if no request to amend

18  the pleading was made, unless it determines that the pleading could not possibly be cured by the

19  allegation of other facts.").  While the court is highly skeptical that plaintiff will be able to do so,

20  it cannot determine with certainty at this time that her FAC could not "possibly" be cured by the

21  allegation of additional facts.  *Cook*, 911 F.2d at 247.  Importantly, however, the court cautions

22  plaintiff that she should only file a second amended complaint if she has a good faith basis for

23  new, additional allegations that would support a finding that the Ninth Circuit's decisions in

24  *Belgau*, *Wright*, and *Ochoa*—as well as the countless other persuasive decisions from courts

25  addressing similar circumstances—do not apply to the claims she asserts here.

26  **D.    Defendant CSEA's Motion for Sanctions**

27       In its motion for sanctions, defendant CSEA argues that plaintiff has brought a frivolous

28  claim against it that is clearly foreclosed by binding Ninth Circuit precedent and that the court

19

1    should consequently award sanctions in the form of attorneys' fees to defendant CSEA for having

2    been required to defend against a frivolous suit.[7]  (Doc. No. 23-1.)  In support of this argument,

3    defendant CSEA lists 41 decisions by the Ninth Circuit and district courts within it in which,

4    according to defendant, those courts have universally reject plaintiff's theory that a union may be

5    a state actor under the circumstances present in this action.  (*Id.* at 12–14.)  Defendant CSEA also

6    argues that this action was brought for an improper purpose.  (*Id.* at 18–27.)  Plaintiff argues in

7    opposition that her claims are not frivolous under existing law because binding Ninth Circuit

8    authority is distinguishable from this action, and that a nonfrivolous argument exists for

9    modifying or reversing any authority adverse to the claim brought against defendant CSEA in this

10   action.  (Doc. No. 24 at 9, 15–25.)[8]

11        The court concludes that there exists "a nonfrivolous argument for extending, modifying,

12   or reversing existing law" as to whether a union is a state actor in circumstances such as those in

13   the present case.  Fed. R. Civ. P. 11(b)(2).  All of plaintiff's claims are clearly foreclosed by

14   binding Ninth Circuit authority, as described above.  Neither of the Ninth Circuit's opinions in

15   *Belgau* or *Wright* is factually distinguishable, as plaintiff contends.  Nevertheless, the court

16   cannot be certain that the Supreme Court would not conceivably overturn the seemingly universal

17   consensus of lower courts in this area, and as a result, an argument for reversing existing law is

18   not objectively "baseless."  *Christian*, 286 F.3d at 1127.

19

---

20   [7]  Defendant CSEA also seeks to have the court impose sanctions on plaintiff's counsel on the
21   grounds that plaintiff's claim asserted against the District defendants is frivolous.  (Doc. No. 23-
     1.)  Defendant CSEA does not argue that it was required to pay the costs of the District
22   defendants' legal defense.  Accordingly, the court declines to impose sanctions in the form of
     defendant CSEA's attorneys' fees on plaintiff's counsel on this basis.

23

24   [8]  In her opposition to defendant CSEA's motion for sanctions, plaintiff requests that the court
     sanction defendant CSEA.  (Doc. No. 24 at 9); *see also Patelco Credit Union v. Sahni*, 262 F.3d
25   897, 913 (9th Cir. 2001) ("A party defending a Rule 11 motion need not comply with the separate
     document and safe harbor provisions when counter-requesting sanctions.").  Plaintiff argues that
26   defendant CSEA "misrepresents various authorities" and compares plaintiff's counsel to "the
     legal team that represented black school children in" *Brown v. Board of Education*, 349 U.S. 294
27   (1955).  (Doc. No. 24 at 32–33.)  In fact, as discussed below, it is plaintiff's counsel that has
     misrepresented legal authority to the court.  Plaintiff's request for sanctions is entirely without
28   merit and will therefore be denied.

1   Moreover, "[s]ince the purpose of Rule 11 sanctions is to deter rather than to compensate,

2   the rules provides that, if a monetary sanction is imposed, it should ordinarily be paid into court

3   as a penalty." Fed. R. Civ. P. 11 advisory committee's note to 1993 amendment. Sanctions in the

4   form of attorneys' fees are to be granted only "under unusual circumstances, particularly for

5   [improper purpose] violations," and when "deterrence may be ineffective unless the sanction . . .

6   directs that some or all of this payment be made to those injured by the violation." *Id.* The court

7   does not find such unusual circumstances to be present here.

8   "As a matter of law, a non-frivolous claim is never filed for an improper purpose." *R.P.*

9   *ex rel. C.P. v. Prescott Unified Sch. Dist.*, 631 F.3d 1117, 1126 (9th Cir. 2011). Because the court

10   has concluded that plaintiff's claim asserted against defendant CSEA was not frivolous, the court

11   also finds that plaintiff's claim was not filed for an improper purpose.

12   Accordingly, defendant CSEA's motion for sanctions on the basis of plaintiff's FAC will

13   be denied.[9]

14   _____

[9] While denying defendant CSEA's motion for sanctions, the court nevertheless notes that the

15   opposition to that motion filed by plaintiff's counsel inexplicably misrepresents both binding and
    non-binding Ninth Circuit authority to this court. Plaintiff's counsel argues that plaintiff's FAC

16   was not frivolous in part because counsel had "prevailed on First and Fourteenth Amendment
    claims for" clients under similar circumstances. (Doc. No. 24 at 25.) Counsel cites to the

17   decisions in *Parde* and *Ochoa*. (*See id.* at 26 ("Most recently, in *Parde* the Ninth Circuit held that
    Ms. Parde suffered a violation of her First and Fourteenth Amendment rights and that she has live

18   claims for retrospective and prospective relief."); ("[T]he Ninth Circuit found that Ochoa . . . had
    been denied her right to procedural due process by the State of Washington.")). However,

19   counsel's client in *Parde* did not prevail on any of her claims, the Ninth Circuit did not hold that
    Ms. Parde suffered a violation of her First and Fourteenth Amendment rights, and the court did

20   not find that Ms. Parde had live claims of any kind. *See Parde*, 2024 WL 2106182, at *3
    (affirming the district court's dismissal of all of Parde's claims without leave to amend).

21   Likewise, the Ninth Circuit did not find that Ms. Ochoa had been denied her right to procedural
    due process by the state of Washington. *See Ochoa*, 48 F.4th at 1110 ("Because Ochoa does not

22   allege facts sufficient to demonstrate that she was deprived of a liberty interest, her Fourteenth
    Amendment claim against . . . the State must fail."). The court is very concerned that counsel has

23   argued that plaintiff's claims are not frivolous in light of counsel prevailing in similar cases, then
    cited to decisions affirming the dismissal of all of the plaintiffs' claims in those cases. It is

24   unclear to the court how counsel could have believed that he prevailed in these cases after "an
    inquiry reasonable under the circumstances." Fed. R. Civ. P. 11(b). "Even ascribing pure

25   motives to counsel in this matter, any inquiry at all would have revealed that [his] citation to" the
    decisions in *Parde* and *Ochoa* "treated black as white. Misrepresentation of citation is clearly

26   grounds for Rule 11 sanction. The court's public condemnation serves as its sanction in this

27   case." *Multi-Media Distrib. Co. v. United States*, 836 F. Supp. 606, 613 n.7 (N.D. Ind. 1993).

28

1

**CONCLUSION**

2          For the reasons stated above:

3     1.    The motion to dismiss filed on behalf of defendants Tammy Reynolds and

4          Michelle Rodriguez (Doc. No. 10) is granted, with leave to amend;

5     2.    The motion to dismiss filed on behalf of defendant California School Employees

6          Association, River Delta Valley Chapter 821 ("CSEA") (Doc. No. 11) is granted,

7          with leave to amend;

8     3.    Within twenty-one (21) days from the date of entry of this order, plaintiff shall file

9          either a second amended complaint or a notice of her intent not to do so; and

10    4.    The motion for sanctions filed by defendant CSEA (Doc. No. 23) is denied.

11        IT IS SO ORDERED.

12   Dated:  **February 18, 2025**

13                                              DALE A. DROZD
                                                UNITED STATES DISTRICT JUDGE

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

22